Tina Wolfson (SBN 174806)
twolfson@ahdootwolfson.com
Robert R. Ahdoot (SBN 172098)
rahdoot@ahdootwolfson.com
Jeff S. Westerman (SBN 94559)
jwesterman@ahdootwolfson.com
Theodore Maya (SBN 223242)
tmaya@ahdootwolfson.com
**AHDOOT & WOLFSON, PC**
2600 West Olive Avenue, Suite 500
Burbank, CA 91505
Tel: (310) 474-9111

Attorneys for Plaintiff Miguel Serrano

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### SOUTHERN DIVISION

| | |
|---|---|
| MIGUEL SERRANO, individually and on behalf of others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>MELROSE INDUSTRIES, PLC; GKN AEROSPACE SERVICES, LTD.; GKN AEROSPACE TRANSPARENCY SYSTEMS, INC., and DOES 1-10,<br><br>Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT FOR DAMAGES**<br><br>1. Public Nuisance<br>2. Private Nuisance<br>3. Negligence<br>4. Trespass<br>5. Strict Liability – Extrahazardous and/or Ultrahazardous Activity<br>6. Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.*)<br><br>**DEMAND FOR JURY TRIAL**<br><br>**ACTION SEEKING STATEWIDE OR NATIONWIDE RELIEF** |

1

Plaintiff Miguel Serrano ("Plaintiff"), individually and on behalf of all others similarly situated, brings this Class Action Complaint against Defendants Melrose Industries, PLC, GKN Aerospace Services, Ltd., GKN Aerospace Transparency Systems, Inc. (collectively "GKN Aerospace"), and DOES 1-10. Plaintiff alleges as follows upon personal knowledge as to himself and his own acts and experiences and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

## INTRODUCTION

1. On or about May 21, 2026, at a Garden Grove, California, site owned, operated, controlled and/or maintained by the GKN Aerospace Defendants, located at 12122 Western Avenue in Garden Grove, California (the "Site"), an industrial tank containing approximately 7,000 gallons of methyl methacrylate ("MMA"), an extremely hazardous and dangerous chemical, became pressurized and began releasing gas as it overheated (the "Incident"). The subject tank was reported to be bulging dangerously, demonstrating signs that it may rupture or possibly explode.

2. As a result of the foregoing unfortunate event, and on that same date, Garden Grove City authorities immediately began issuing evacuation orders in the areas surrounding the Site. As authorities realized the increasing hazardous nature of the Incident, the evacuation orders were expanded on May 22, 2016, to include an estimated 40,000 people.

3. Plaintiff now brings this action to hold Defendants accountable for, among other things, their failure to exercise due care in operating the Site, leading to the release and potential explosion of toxic substances, forcing the evacuation of Plaintiffs and other residents from their homes, workplaces, and businesses.

## PARTIES

4. Plaintiff Miguel Serrano is an individual who resides in Garden Grove, California. On May 21, 2026, Plaintiff Serrano, his wife, and their three children received mandatory evacuation orders as a direct result of the release and potential

CLASS ACTION COMPLAINT FOR DAMAGES

explosion of toxic substances at the Site. Plaintiff Serrano suffered damages including, but not limited to, the loss of his home, economic loss from evacuation-related expenses, lost wages, disruption and inconvenience, and interference with property rights.

5. Melrose Industries, PLC is a company registered in England with an address of The Colmore Building, 20 Colmore Circus Queensway, Birmingham, B4 6AT, United Kingdom.

6. GKN Aerospace Services, Ltd. is a company registered in England with an address of 11th Floor, The Colmore Building, 20 Colmore Circus Queensway, Birmingham, B4 6AT, United Kingdom, Company number 00355922.

7. GKN Aerospace Transparency Systems, Inc., is a California registered corporation with its principal place of business located at 12122 Western Avenue, Garden Grove, California 92841.

8. Plaintiff is informed and believes and, based on such information and belief, alleges that Melrose Industries PLC, GKN Aerospace Services Limited, GKN Aerospace Transparency Systems, inclusive, and each of them, are and at all material times have been, the owners, agents, servants or employees of each other, purporting to act within the scope of said agency, service or employment in performing the acts and omitting to act as averred herein. Each of the Defendants named herein are believed to, and are alleged to have been acting in concert with, as owner, employee, agent, co-conspirator or member of a joint venture of, each of the other Defendants, and are therefore alleged to be jointly and severally liable for any and/or all claims set forth herein, except as otherwise alleged.

9. Plaintiff is ignorant of the true names and capacities of the defendants sued herein as DOES 1 through 10 and, therefore, sues these defendants by such fictitious names. Plaintiff will amend this Complaint to allege the true names and capacities of the Doe defendants when their identities have been ascertained. Plaintiff is informed and believes, and on that basis alleges, that each of the

CLASS ACTION COMPLAINT FOR DAMAGES

fictitiously named defendants is responsible in some manner for the occurrences herein alleged, and that Plaintiff's damages as herein alleged were proximately caused by their conduct.

**JURISDICTION AND VENUE**

10.     This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), because the amount in controversy exceeds $5 million, given that tens of thousands of people were forced to evacuate; there are more than 100 putative class members; Plaintiff and any putative class members are citizens of a state different from the GKN Aerospace Defendants; and Plaintiff and any putative class members are citizens of a state while Defendant GKN Aerospace is a citizen of a foreign state.

11.     This Court has personal jurisdiction over Defendants because Defendants conduct substantial business in the State of California and this lawsuit arises out of Defendants' acts alleged herein which originated in this District. Additionally, the GKN Aerospace Defendants are registered to do business in California.

12.     Venue is proper in this District because: (a) putative class members are residents and citizens of this District; (b) Defendants are subject to the Court's personal jurisdiction with respect to this action and are therefore considered residents of this District for venue purposes; and (c) pursuant to 28 U.S.C. § 1391(b), a substantial part of the events or omissions giving rise to the harm of the putative class members occurred in this District, and a substantial part of the property that is the subject of this action is situated in this District. Finally, to the extent the GKN Aerospace Defendants are not considered residents of this District, they may be sued in any judicial district, including this District, under 28 U.S.C. § 1391(c)(3).

**COMMON FACTUAL ALLEGATIONS**

**I.     Background on the GKN Aerospace Site**

4

13. GKN Aerospace claims to be a leading global tier one supplier of airframe and engine structures, landing gear, electrical interconnection systems, transparencies, and aftermarket services. It claims to supply products and services to a wide range of commercial and military aircraft and engine prime contractors, and other tier one suppliers.

14. At all relevant time periods, GKN Aerospace owned, operated, controlled and/or maintained the Site located in Garden Grove, California, and claims that they are "the world's leading provider of military transparency systems and commercial aircraft transparencies."

15. The Site purportedly offers a full range of capabilities for design, analysis, testing and certification of military canopies, cockpit windows and passenger windows, as well as manufacturing the world-leading F-35 canopy, and transparencies for the Boeing 787 Dreamliner and 737, the Airbus A350, HondaJet and Bombardier C-Series.

16. Defendants use, handle, and store explosive, flammable, and hazardous substances at the Site. These substances include, but are not limited to, MMA, which are used in the manufacturing of methacrylate resins and plastics.

17. MMA is extremely hazardous and dangerous. Exposure can occur through inhalation and skin contact. This chemical can, among other harms, permanently damage eyes, skin, nose, throat, and respiratory system.

18. Organizations such as the United States Environmental Protection Agency ("EPA") have identified certain health hazards associated with exposure to MMA including, but not limited to, dermal, eye and mucus membrane irritation, respiratory symptoms, and neurological symptoms.

19. If released, MMA can become airborne and form a toxic gas cloud, or become extremely explosive, threatening all persons in proximity to such an event.

II. The GKN Aerospace Incident

20. On May 21, 2026, the Incident initially occurred when Firefighters

CLASS ACTION COMPLAINT FOR DAMAGES

responded to the Site located in Garden Grove, California, bearing the address 12122 Western Avenue, Garden Grove, California 92841, where an industrial tank containing approximately 7,000 gallons of MMA was becoming pressurized and releasing gas as it overheated. The tank was bulging dangerously, demonstrating signs that the subject tank could eventually explode.

21. Division Chief Nick Freeman of the Orange County Fire Authority stated that "[MMA] is a respiratory irritant, so it can start off very mild, but it can progress to a point where, yes, you would probably require hospitalization, if not more."

22. Based upon information and belief, Firefighters responding to the Site attempted to cool the subject tank by shooting water on its exterior so as to allow GKN Aerospace's response team to get close enough to the tank to inject a neutralizing agent into the tank to reduce the chemical's volatility. However, Orange County Fire Authority (OCFA) Division Chief Craig Covey stated that when the response team arrived, it found that the tank's valves were "gummed up" and inoperable, making the interior to the tank inaccessible.

23. At that point, Chief Covey stated that "[t]here are literally two options left remaining. One, the tank fails and spills a total of about 6,000 to 7,000 gallons of very bad chemicals into the parking lot in that area, or two, the tank goes into a thermal runaway and blows up, affecting the tanks that are around them that have fuel or the chemicals in them as well."

CLASS ACTION COMPLAINT FOR DAMAGES

24. As a result of the foregoing, on May 21, 2016, City authorities began issuing evacuation orders in the areas surrounding the Site (the "Evacuation Zone"), which were expanded on May 22, 2016 to include an estimated 40,000 people. The Evacuation Zone is set forth below:

25. Realizing the severity of the situation, on May 23, 2026, Governor Gavin Newsom declared a state of emergency stating, "I'm proclaiming a state of emergency in Orange County as California continues to respond to the hazardous chemical incident in Garden Grove." *See* https://x.com/CAgovernor/status/2058264096131469475?ref_src=twsrc%5Etfw%7Ctwcamp%5Etweetembed%7Ctwterm%5E2058264096131469475%7Ctwgr%5E798bf2c54bfea9f752bb611b1602d3745228b0bc%7Ctwcon%5Es1_&ref_url=https%3A%2F%2Fabc7news.com%2Fpost%2Fnewsom-declares-state-emergency-orange-due-chemical-leak-garden-grove-makes-additional-shelter-sites-available%2F19157616%2F (last visited May 26, 2026).

**III. Significant Impact of the Incident on the residents of Garden Grove**

26. As of the date of the filing of this Complaint, GKN Aerospace has surprisingly, and shockingly, done little to address the Incident, much less assist the tens of thousands of Garden Grove residents that have been affected as a result of its actions.

27. Needless to say, the Incident has been one of the largest disasters the

Garden Grove community has ever seen or experienced.

28.    The evacuation orders forced people living and working in the Evacuation Zone, spanning more than 10 square miles, to flee.

29.    Gridlock stalled traffic throughout the City of Garden Grove. Residents received reverse 911 telephone calls, police officers knocked on their front doors, they were advised to immediately pack their personal belongings and flee to safety, and they faced imminent danger.

30.    Needless to say, significant concerns about pollution and contamination resulting from the Incident continue to worry Garden Grove residents and business owners.

31.    Surprisingly, Defendants have made no attempts to reimburse residents or business owners for expenses related to the Incident, such as accommodation, food, and transportation costs, much less the businesses that have suffered loss as a result of the evacuation orders.

<u>**PLAINTIFF'S FACTUAL ALLEGATIONS**</u>

32.    Plaintiff and his family reside in Garden Grove, near the Site of the Incident and inside the initial Evacuation Zone. On May 21, 2026, Plaintiff and his family were advised to evacuate their home due to the Incident. They were told that needed to evacuate the premises immediately.

33.    Plaintiff and his family had nowhere to go, and by the time they reached the local shelter it was full. Plaintiff was forced to pay for a hotel room for his family while they were mandatorily evacuated.

34.    Plaintiff also missed three days of work, and lost wages as a result.

<u>**CLASS ACTION ALLEGATIONS**</u>

35.    Plaintiff brings this action on his own behalf and under Federal Rules of Civil Procedure Rule 23(a) and (b)(3). Plaintiff seeks certification of a class ("Class") initially defined as follows:

All persons and entities who/which on May 21,2026 were residents of, present in, employed in, or maintained a place of business in the Evacuation Zone."

36. Excluded from the above Class are Defendants, including any entity in which Defendants have a controlling interest, is a parent or subsidiary, or which is controlled by Defendants, as well as the officers, directors, affiliates, legal representative, heirs, predecessors, successors, and assigns of Defendants. Also excluded are the judges and court personnel in this case and any members of their immediate families.

37. Collectively, members of the Class are referred to as "Class Members."

38. Plaintiff reserves the right to amend the Class definition if discovery and further investigation reveal that the Class should be expanded or otherwise modified.

39. **Numerosity**. Fed. R. Civ. P. 23(a)(1). The members of the Class are so numerous that the joinder of all members is impractical. According to public information, approximately 50,000 individuals were subject to the relevant evacuation orders for several days. The disposition of the claims of Class Members in a single action will provide substantial benefits to all parties and to the Court.

40. **Commonality**. Fed R. Civ. P. 23(a)(2) and (b)(3). There are questions of law and fact common to the Class, which predominate over any questions affecting only individual Class Members. These common questions of law and fact include, without limitation:

a. Whether Defendants, by acting or failing to act, caused the Incident;

b. Whether Defendants owed a duty to Plaintiff and other Class Members to exercise due care in the operation of the Site;

c. Whether Defendants breached their duty to exercise the ordinary care and diligence in the ownership, operation, management, supervision,

9

inspection, maintenance, repair, and/or control of the Site, so as to not cause harm to public property, the environment, public resources, public health, and/or the comfortable use and enjoyment of life and liberty by the public.

d. Whether Defendants' acts or omissions were the legal and proximate cause of Plaintiffs' damages.

e. Whether Defendants' acts or omissions as set forth herein have interfered with Plaintiffs' property rights, privileges, and use and enjoyment of property so as to constitute a nuisance.

f. Whether Defendants were engaged in an extrahazardous and/or ultrahazardous activity and/or intentionally, recklessly, and/or negligently caused an array of toxic substances to enter Plaintiffs' property.

g. Whether Defendants' activities in operating, controlling, managing, and/or maintaining the Site constitute an extrahazardous and/or ultrahazardous and abnormally dangerous activity.

41. **Typicality**. Fed. R. Civ. P. 23(a)(3). Plaintiffs' claims are typical of those of other Class Members because Plaintiff and Class Members all suffered damages resulting from the Evacuation Orders that were issued as a direct result of the Site Incident.

42. **Adequacy of Representation**. Fed. R. Civ. P. 23(a)(4). Plaintiff will fairly and adequately represent and protect the interests of the members of the Class. Plaintiff has retained competent counsel experienced in litigation of class actions, including actions relating to chemical incidents, and Plaintiff intends to prosecute this action vigorously. Plaintiff's claims are typical of the claims of other members of the Class and Plaintiff has the same non-conflicting interests as the other Members of the Class. The interest of the Class will be fairly and adequately represented by Plaintiff and his counsel.

43 **Superiority of Class Action**. Fed R. Civ. P. 23(b)(3). A class action is superior to other available methods for the fair and efficient adjudication of this

CLASS ACTION COMPLAINT FOR DAMAGES

controversy since joinder of all the members of the Class is impracticable, and questions of law and fact common to the class predominate over any questions affecting only individual members of the class. Furthermore, the adjudication of this controversy through a class action will avoid the possibility of inconsistent and potentially conflicting adjudication of the asserted claims. There will be no difficulty in the management of this action as a class action.

44. Damages for any individual class member are likely insufficient to justify the cost of individual litigation so that, in the absence of class treatment, Defendant's violations of law inflicting substantial damages in the aggregate would go un-remedied.

## CAUSES OF ACTION

### Count I

### (Public Nuisance)

45. Plaintiff incorporates the factual allegations contained in the preceding paragraphs of this Complaint.

46 Defendants' acts and omissions related to the Incident, including the negligent storage, containment, maintenance, monitoring, supervision, and control of MMA, created dangerous conditions that were harmful to health and substantially and unreasonably interfered with rights common to the surrounding public, including public health, public safety, public peace, public comfort, public convenience, property rights, and the safe use of public and private property throughout the surrounding communities.

47. The hazardous conditions created by Defendants resulted in widespread emergency response measures, including evacuation orders, shelter-in-place directives, road closures, emergency perimeters, hazardous materials response operations, public safety warnings, and substantial disruption to residential neighborhoods and surrounding communities in Garden Grove, Stanton, Cypress, Anaheim, Buena Park, Westminster, and nearby areas.

48.    Defendants' conduct created a substantial and continuing risk of fire, explosion, toxic vapor migration, environmental contamination, airborne chemical exposure, and catastrophic harm affecting tens of thousands of residents, businesses, schools, roadways, public infrastructure, and properties located near the Site.

49.    The interference caused by Defendants was substantial, unreasonable, offensive, and harmful to the public, and would be highly offensive to an ordinary reasonable person.

50.    Plaintiff and members of the proposed Class suffered injuries and damages different in kind from those suffered by the general public because Plaintiff and Class members resided in the Evacuation Zone, suffered direct interference with the use and enjoyment of their homes and properties, incurred displacement-related expenses, lost wages, contamination concerns, fear, annoyance, inconvenience, and property-related damages.

**Count II**

**(Private Nuisance)**

51.    Plaintiff incorporates the factual allegations contained in the preceding paragraphs of this Complaint.

52.    Plaintiff and other Class members were residents of, present in, employed in, or maintained places of business in the Evacuation Zone.

53.    Defendants' acts or omissions as set forth herein created a condition that: was harmful to the health of Plaintiff and other Class members, was offensive to Plaintiff and other Class members; interfered with the property rights of Plaintiff and other Class members; unlawfully obstructed the free passage and use, in the customary manner, of all land within the Evacuation Zone; and presented the grave risk of of fire, explosion, toxic vapor migration, environmental contamination, airborne chemical exposure, and catastrophic harm.

54.    Defendants' conduct in causing the Incident was the result of an abnormally dangerous activity, and Defendants acted negligently if not recklessly in

CLASS ACTION COMPLAINT FOR DAMAGES

causing the Incident.

55.     The Incident substantially interfered with Plaintiff's use of enjoyment of his residence, like other Class members.

56.     The seriousness of the harm caused by the Incident outweighs any public benefit of Defendants' attendant conduct.

56.     Plaintiff did not consent to Defendants' actions as described herein.

57.     Defendants' act and omissions have caused harm to Plaintiff and other Class members.

## Count III

## (Negligence)

58.     Plaintiff incorporates the factual allegations contained in the preceding paragraphs of this Complaint.

59.     Plaintiff is informed and believes, and thereon alleges, that at the time of the Incident, Defendants owned, operated, controlled, managed, and/or maintained the Site, as described above.

60.     At all relevant times, Defendants were required to exercise the utmost care and diligence in the ownership, operation, management, supervision, inspection, maintenance, repair, and/or control of the Site, so as not to cause harm to public property, the environment, public resources, public health, and/or the comfortable use and enjoyment of life and liberty by the public.

61.     Defendants failed to exercise due care in the maintenance and monitoring of the Site so as to prevent fires, explosions, and/or the uncontrolled release of hazardous substances, odors, and wastes into the environment.

62.     As a direct and proximate result of Defendants' breach of their duties, Plaintiff and those similarly situated were harmed. Defendants' breach of their

CLASS ACTION COMPLAINT FOR DAMAGES

duties was the direct and proximate cause of the Site Incident that caused the release of hazardous substances, odors, and wastes, and interfered with Plaintiff's property rights.

63.    As further direct and legal result of Defendants' breach of their duties, Plaintiff suffered damages, including but not limited to, economic loss from evacuation-related expenses, lost wages, fear and anxiety, disruption and inconvenience, and interference with property rights.

64.    Plaintiff did not consent to Defendants' conduct, which required Class members to evacuate for over 72 hours to avoid immediate harm and has created long-lasting and continuing harm.

65.    In addition to the negligence stated above, and in the alternative, the injuries and damages suffered by Plaintiff and others were caused by acts or omissions of Defendants, which acts or omissions may be beyond proof by Plaintiff herein, but which were within the knowledge and control of Defendants such that there are no other possible conclusions than that the Site Incident resulted from the negligence of Defendants. Furthermore, the Site Incident would not have occurred had the Defendants exercised the high degree of care imposed on them and Plaintiffs therefore plead the doctrine of *res ipsa loquitur*.

## Count IV

### (Trespass)

66.    Plaintiff incorporates the factual allegations contained in the preceding paragraphs of this Complaint.

67.    Plaintiff and other Class members are owners, occupants, and/or tenants of real property.

68.    Defendants caused MMA to be released near the real properties of Plaintiff and the Class, which in turn caused or threatened to cause MMA to travel to those properties.

14

69.    Plaintiff did not give permission for this direct and/or indirect entry.

70.    Plaintiff, along with numerous others in the Evacuation Zone, has been harmed by Defendants' conduct, as Plaintiff suffered the loss of the use and enjoyment of his property.

71.    An ordinary person of reasonable sensibilities would reasonably be annoyed and/or disturbed by the conditions created by Defendants.

72.    As a direct and legal cause of the wrongful acts set forth herein, Plaintiff suffered damages as described in the preceding paragraphs.

**Count V**

**(Strict Liability – Extrahazardous and/or Ultrahazardous Activity)**

73.    Plaintiff incorporates the factual allegations contained in the preceding paragraphs of this Complaint.

74.    At all times relevant herein, Defendants' activities in operating, controlling, managing, and/or maintaining the Site constitute an extrahazardous and/or ultrahazardous and abnormally dangerous activity, as the operation and maintenance of a refinery using hydrogen fluoride in a populated area poses serious risk of harm, regardless of the amount of care exercised.

75.    As alleged herein, Plaintiff was seriously harmed, as a direct result of Defendants' extrahazardous and/or ultrahazardous and abnormally dangers activities in operating and maintaining the Site.

76.    Plaintiff's harm, as outlined above, was the kind of harm that would be anticipated as a result of the risk created by Defendants' extrashazardous and/or ultrahazardous and abnormally dangerous activities, specifically the operation and maintenance of a facility with MMA in a populated area.

77.    Defendants' extrahazardous and/or ultrahazardous and abnormally dangerous activities was the direct cause of the evacuation that deprived Plaintiffs of the enjoyment and use of their homes and their ability to operate businesses and work.

78.     As a direct and legal cause of the wrongful acts herein set forth, Plaintiff suffered damages as described above in the preceding paragraphs.

## Count VI

**(Violation of Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.*)**

79.     Plaintiff incorporates the factual allegations contained in the preceding paragraphs of this Complaint.

80.     Plaintiff brings this claim individually and on behalf of the Class.

81.     Plaintiff brings this cause of action pursuant to California's Unfair Competition Law, codified in California Business and Professions Code § 17200, *et seq.* ("the UCL").

82.     The UCL defines unfair competition as any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Cal. Bus. & Prof. Code § 17500.

83.     Defendants, at all relevant time periods, caused Plaintiffs, and those Class Members Plaintiff seeks to represent, excessive, injury-in-fact damages as a result of their actions as alleged herein.

84.     Defendants' actions are unlawful, unfair and/or fraudulent as alleged herein, which resulted in the Incident.

85.     As a direct and proximate result of Defendants' violation of the UCL, Plaintiff and members of the Class have suffered injury-in-fact, and have lost money in the form of unreimbursed economic loss and/or loss of enjoyment/use of their property and/or business.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff individually and on behalf of all Class Members proposed in this Complaint, respectfully request that the Court enter judgment in their favor and against Defendants as follows:

a.     For an Order certifying the Class, and appointing Plaintiff and his Counsel to represent the Class;

CLASS ACTION COMPLAINT FOR DAMAGES

b.      Awarding Plaintiff actual damages, including compensatory and consequential damages, in an amount to be determined at trial;

c.      Awarding Plaintiff pre-judgment and post-judgment interest;

d.      Awarding Plaintiff such costs and disbursements as are incurred in prosecuting this action, including reasonable attorneys' fees, as allowable by law; and

e.      Granting Plaintiff such other and further relief as this Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Based on the foregoing, Plaintiffs, on behalf of themselves and all others similarly situated, hereby demand a jury trial for all claims so triable.

DATED:  May 26, 2026                          Respectfully submitted,


*/s/ Tina Wolfson*
Tina Wolfson (SBN 174806)
twolfson@ahdootwolfson.com
Robert R. Ahdoot (SBN 172098)
rahdoot@ahdootwolfson.com
Jeff S. Westerman (SBN 94559)
jwesterman@ahdootwolfson.com
Theodore Maya (SBN 223242)
tmaya@ahdootwolfson.com
**AHDOOT & WOLFSON, PC**
2600 West Olive Avenue, Suite 500
Burbank, CA 91505
Tel: (310) 474-9111

*Counsel for Plaintiff and the Proposed Class*

CLASS ACTION COMPLAINT FOR DAMAGES